848 F.2d 189
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Jeannette H. DEMOSS, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 87-3148.
 United States Court of Appeals, Sixth Circuit.
 May 5, 1988.
 
 Before NATHANIEL R. JONES, MILBURN and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Jeannette H. DeMoss, the plaintiff-appellant, appeals from a judgment, entered on December 18, 1986, affirming the decision of the Secretary of Health and Human Services ("Secretary") and denying her claim for social security disability benefits. For the following reasons, we find her claims to be without merit and therefore affirm the December 18, 1986 judgment.
 
 I.
 
 2
 Plaintiff-appellant, Jeannette H. DeMoss, filed an application for a period of disability and disability insurance benefits on October 19, 1983. In her application she alleged that she had been unable to work since December 8, 1982 because of respiratory problems which had rendered her disabled. Her application was denied initially and upon reconsideration.
 
 
 3
 Upon her request, an administrative hearing was held on December 3, 1984. At that hearing, DeMoss, represented by an attorney, and a vocational expert testified before the administrative law judge ("ALJ"). In a decision dated January 29, 1985, the ALJ held that plaintiff's impairments did not prevent the performance of her past relevant work and therefore she was not under a disability as defined in the Social Security Act, 42 U.S.C. Sec. 401 et seq. (1982). The Appeals Council denied review on March 1, 1985, thereby allowing the ALJ's decision to become the final decision of the Secretary.
 
 
 4
 On April 30, 1985, plaintiff filed a complaint in United States District Court for the Northern District of Ohio seeking judicial review of the Secretary's decision. By agreement of the parties, and pursuant to 28 U.S.C. Section 636(c) (1982), United States Magistrate Joseph W. Bartunek was given the authority to decide the case. The parties further agreed that any appeal to this court should be taken directly from his decision. By an order and decision dated December 18, 1986, Bartunek affirmed the Secretary's decision, thus finding it to be supported by substantial evidence found in the record as a whole. On February 11, 1987, the plaintiff timely filed her notice of appeal.
 
 
 5
 The relevant facts of this appeal are as follows. DeMoss was born on January 6, 1923 and was fifty-nine years old when she allegedly became unable to work. She has a high school education and her past relevant work is that of a "wire assembler" and trainer of new employees for Parma International, Inc. ("Parma"), a manufacturer of model racing cars. She worked in this position for Parma from 1973 until she quit in December 1982. Her job as a wire assembler included winding wires around cores to make resistors.
 
 
 6
 In December 1982, DeMoss fainted while at work and immediately thereafter decided that she could no longer work for Parma because of her health. Since leaving Parma, she has not sought nor worked at any type of employment.
 
 
 7
 At her administrative hearing, plaintiff testified to a number of things, including her physical capabilities, her daily activities and the requirements of her job. Her testimony, summarized, is as follows.
 
 
 8
 Plaintiff first testified that she quit her job because she was no longer able to perform it due to the fact that she was required to sit and bend over. She claimed that she was unable to do these movements for any length of time because her back would begin to ache and she had to stand to obtain relief, a movement which kept her from performing her job. She also testified that she was constantly fatigued and suffered from, inter alia, coughing spasms brought on by exertion. She stated that she could not sit or stand for more than one-half hour at a time and that she could only lift five pounds.
 
 
 9
 In contrast to these seemingly strong restrictions on her activities, plaintiff testified that she was able to drive, even if only for short distances, and could travel and had traveled recently to Missouri and Colorado. She also testified that she was able to do housework, laundry, cook, shop, socialize, tend to her personal needs, go to the movies, take short walks and watch television.
 
 
 10
 Plaintiff also made several statements regarding her job as a wire assembler. She stated that her job required her to operate a machine that manufactured electrical resistors by winding wire around a core. She was also required to lift a maximum of twenty pounds two or three times daily. In addition, she had to refer to a manual to set up the machine and to determine correct usage of each wire. Although she operated the machine by depressing a foot pedal, she testified that her job required good manual dexterity and use of both hands. She was also required to keep records of her production and to test the final product by use of an ohmmeter (an instrument which measures, in ohms, the resistance of a conductor).
 
 
 11
 Plaintiff, in addition to her job, was also a trainer for Parma. That is, plaintiff periodically trained new employees in her department. That training consisted of a demonstration of how to operate the machine, an explanation and demonstration of the procedures used to manufacture electrical resistors as well as instruction in working from the reference manual. She stated that this training normally lasted two weeks and, after training was completed, she continued to evaluate the trainees' performances.
 
 
 12
 DeMoss also testified that the area in which she worked was located near the spray-painting part of the plant. Although the paint was clean, the fumes produced from the spray-painting operation affected her adversely and caused her to wear a protective mask at least once or twice a week.
 
 
 13
 Plaintiff's medical records were also produced at the hearing. Plaintiff's relevant medical evidence, summarized, is as follows.
 
 
 14
 On November 2, 1983, Dr. Martha Bender examined plaintiff and produced a set of pulmonary function studies. Bender's diagnosis was a "moderate obstructive, considerably reversible ventilatory defect."
 
 
 15
 On January 30, 1984, Dr. Richard A. Katzman examined the plaintiff and found that she suffered from "chronic obstructive lung disease" and a "possible prolapsed mitral valve." Dr. Katzman found that the plaintiff's mental status was normal, as was her neck, head, skin, eyes, ears, nose, throat, back, reflexes, neurological system and abdomen. An EKG was also normal. Her heart was normal except for an intermittent click, and her lung sounds revealed a depressed diaphragm and faint peripheral wheezing. Pulmonary function studies revealed a mild obstructive ventilatory defect.
 
 
 16
 On March 22, 1984, Dr. June M. Rees, a psychiatrist, after examining the plaintiff, found that she did not suffer from any type of psychiatric impairment. Indeed, at her administrative hearing, DeMoss flatly denied any mental illness. On April 3, 1984, another psychiatrist confirmed Dr. Rees's findings.
 
 
 17
 Dr. Harry Hall, plaintiff's treating physician for over twelve years, also produced plaintiff's medical records. As of December 1, 1983, one year after plaintiff's alleged onset date, Dr. Hall recognized that the plaintiff could occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, push, pull, grasp, finely manipulate and use foot controls. He found that she could sit, stand and walk for up to four hours at a time in an eight hour day. She could also bend, crawl, reach, squat and climb. Dr. Hall did, however, place moderate restrictions on the plaintiff's ability to engage in some activities. For instance, he limited her driving activity and instructed her to avoid places with humidity changes or where she would be exposed to dust, fumes and/or gases.
 
 
 18
 Consultive physicians Dr. George Kress and Dr. Edmond Gardner performed, respectively, separate residual functional capacity tests on the plaintiff in February and July 1984. Both examinations resulted in the same assessment, i.e., plaintiff had the capacity to lift a maximum of twenty pounds or frequently lift up to ten pounds; she could sit, stand or walk about six hours per eight hour day; she had an unlimited ability to push, pull, reach, handle, feel, finger, hear, see and speak, and a somewhat more limited ability to climb, balance, stoop, kneel, crouch and crawl. Drs. Kress and Gardner also felt that DeMoss should avoid smoke and fumes, but that any allegation of mental impairment was without merit.
 
 
 19
 Finally, Eva Tinianow, a certified rehabilitation counselor who testified at the administrative hearing as a vocational expert, characterized plaintiff's past work as a wire assembler as light or semi-sedentary work. See 20 C.F.R. Sec. 404.1567(a) and (b) (1987)).
 
 
 20
 Tinianow also identified plaintiff's past work as semi-skilled and as imparting transferable skills. Such skills included reading specifications and working from written orders, familiarity with specific materials and tools, inspecting completed work, dexterity, eye-hand coordination and oral communication. Ms. Tinianow also stated that the plaintiff's type of past work was available in significant numbers, even in a clean environment. She noted that the electronics and manufacturing industries, a type of work similar to plaintiff's, "must be" clean, otherwise their products might be faulty. Tinianow testified that there were 2,000,000 jobs nationally in the electronics and electronic manufacturing industries and that 22,400 of these jobs were in Cuyahoga County alone. She also stated that assemblers, a job similar to plaintiff's, make up the largest segment of employees within that industry and that that type of work constituted a significant number of local jobs.
 
 II.
 
 21
 Our standard of review in a case such as this is well-known. This court has set forth the "substantial evidence" standard many times, see, e.g., Garner v. Heckler, 745 F.2d 383, 387-88 (6th Cir.1984), and, therefore, we do not repeat it. Rather, we make only the following observation. That is, while it is quite clear that we are to review the administrative record in its entirety to determine if the Secretary's findings are supported by substantial evidence, it is for the Secretary, as the trier of fact, to resolve evidentiary conflicts and to decide questions of credibility. And, once the findings of the Secretary are found to be supported by substantial evidence, the Secretary's determination is conclusive and his decision denying benefits cannot be overturned.
 
 III.
 
 22
 Plaintiff raises only one issue on this appeal. Specifically, plaintiff alleges that the Secretary mischaracterized her past relevant work. However, after reviewing the Secretary's decision we find that it is supported by substantial evidence found in the record as a whole.
 
 
 23
 Plaintiff argues to the contrary asserting that the Secretary's decision is inconsistent not only in its findings but also in its interpretation of the Agency's regulations. She claims that her job description was expanded beyond its characteristics into a broad generic classification. Plaintiff also points out that the evidence showed that she needed to work in an area free of fumes and dust. She claims that since her past work exposed her to such materials, she could not, and cannot, perform her past relevant work. Thus, she argues that the Secretary erred in this regard.
 
 
 24
 In rendering his decision, the Secretary noted:
 
 
 25
 [T]he peculiarity of the claimant's past work did expose her to paint fumes, which aggravated her lung condition. Essentially, therefore, the claimant would be able to return to her former job except for this environmental factor. However, in deciding whether a claimant is capable of returning to past relevant work under Social Security Regulations, consideration will be given both to the work as the claimant performed it and to the work as it is generally performed within the national economy (See Social Security Rulings 82-61 and 82-62). Thus, where a claimant is incapable of returning to the particular job which he or she once performed but where the same claimant would be capable of performing the same job as it is typically performed in the national economy, that claimant is considered to be capable of returning to past relevant work. Reviewing the claimant's job requirements in light of the vocational expert's testimony, the Administrative Law Judge finds that in spite of her environmental limitations, she retains the capacity to return to her past relevant work as wire assembler as generally performed in the national economy although she cannot return to the particular plant where she was formerly employed.
 
 
 26
 J.App. at 12 (emphasis added). In so holding, the Secretary expressly relied upon the vocational expert's testimony to the effect that jobs existed in the national economy which were the same as the plaintiff's work type. The Secretary summarized the vocational expert's testimony as follows:
 
 
 27
 At the hearing Ms. Tinianow [the vocational expert] testified that, as described by the claimant, her former work had the lifting requirements of "light work." [I] note that the claimant's description of her own work is that of an essentially sedentary occupation from a standpoint of minimal walking or standing requirements with the exception of lifting up to 20 pounds. Further, Ms. Tinianow testified that this work is normally performed in [a] clean environment, and that the number of such assembly jobs performed in a clean environment is a significant number within the national economy.
 
 
 28
 J.App. at 12.
 
 
 29
 It is indeed true that the relevant inquiry is whether the plaintiff can return to her past "type" of work, not whether she can perform her past job. In Studaway v. Secretary of Health & Human Services, 815 F.2d 1074 (6th Cir.1987), this court stated:
 
 
 30
 [T]he [Social Security] Act requires that [the plaintiff] show that his impairments are so severe that he is "unable to do his previous work...." He must prove "an inability to return to his former type of work and not just to his former job."
 
 
 31
 Id. at 1076 (citations omitted and emphasis in original).
 
 
 32
 In determining whether or not a plaintiff retains the capacity to perform his or her past relevant work, there are three possible tests. See Social Security Ruling 82-61, Social Security Rulings (Cum.ed.1982) at 186. One such test is whether the plaintiff retains the capacity to perform the job as ordinarily required by employers throughout the national economy. Under this test, if the plaintiff cannot perform the excessive functional demands and job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the plaintiff should be found "not disabled." Social Security Ruling 82-61, n. 3.
 
 
 33
 In this case, the plaintiff's duties as a wire assembler consisted of putting together electrical resistors. The work was done by machine, but required foot or hand pressures to cause the machine to wind the wire around the core. The core weight was described in ounces, but the box of cores needed to supply the machine weighed around twenty pounds. Thus, DeMoss would have to lift and carry between two and three boxes of cores a day to supply the machine.
 
 
 34
 Although plaintiff alleges that she can no longer perform her job due to her pain and combined physical ailments, the Secretary's decision holding that such allegations were unsupported by the objective medical evidence and that the plaintiff could indeed, at least physically, perform her past relevant work is certainly proper. As such, plaintiff is not limited in her physical capabilities to perform her past work, rather her limitations are non-exertional. Those restrictions do limit her to working in a clean environment, i.e., one which does not have smoke or fumes in it. Because plaintiff's previous job was not in such an environment, the Secretary was required to consider whether she could perform the functional demands and job duties generally required for wire assemblers throughout the national economy. In making this determination, the Secretary relied upon the vocational expert's testimony[1] that there were two million jobs nationally and 22,400 jobs in Cuyahoga County in the electric manufacturing industry, an industry which she stated closely corresponded with plaintiff's past work. She further testified that assemblers, a job similar to plaintiff's, come from the largest segment of employees within that industry. She also stated that a significant number of these jobs were in a clean environment.
 
 
 35
 Plaintiff argues, however, that the vocational expert mistakenly classified her past work as semi-skilled. This contention is also without merit.
 
 
 36
 The vocational expert classified plaintiff's past work as semi-skilled based upon plaintiff's own description of her job duties. This description included reading specifications and working from written orders, familiarity with specific materials and tools, inspecting completed work, hand soldering, dexterity, eye-hand coordination and oral communication.
 
 
 37
 Semi-skilled work is work which needs some skills but does not require the employee to do the more complex work duties. The Secretary's regulations define semi-skilled work as follows:
 
 
 38
 Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks.
 
 
 39
 20 C.F.R. Sec. 404.1568(b) (1987). Although plaintiff's own description of her work duties places her within this category, she claims it was a mischaracterization since the training period for her job was less than two weeks and since a semi-skilled job takes thirty days or more to learn. See 20 C.F.R. Sec. 404.1568(a) (1985) (stating that an employee can usually learn an unskilled job in thirty days). In deciding this issue, we must determine, from the regulations, the intent of the Agency as to the relevance of the time in which it takes one to learn a job.
 
 
 40
 Seemingly, the time period in which it takes to train for a job is only one indicator of many that the Secretary can review to determine whether to classify a job as unskilled, semi-skilled or skilled. The Secretary can certainly also consider work activities and work descriptions in making his determination. This is especially true in a case such as this where the plaintiff stated that, although she trained the employees in a two week period, many trainees did not understand or adequately perform the work immediately after that period.
 
 
 41
 Because it is not clear from the relevant regulation (20 C.F.R. Sec. 404.1568(b) does not even mention a training time period for semi-skilled work) that the Agency intended that job training time be the determinative factor as to whether a job is classified as unskilled, semi-skilled or skilled, we hold that such a factor is not dispositive of that determination, but rather is only one factor to be considered along with several others.[2] In this case, when those factors are considered, the plaintiff's own description of her past work places it within the parameters of a semi-skilled job. Therefore, the Secretary's decision that plaintiff's past work is semi-skilled is supported by substantial evidence found in the record as a whole.
 
 
 42
 The vocational expert also concluded that the plaintiff's skills were transferable. A transferable skill refers to learned abilities which combine knowledge with coordinated physical movements. Ellington v. Secretary of Health & Human Services, 738 F.2d 159, 161 (6th Cir.1984). The evidence in the record clearly establishes that the vocational expert's characterization of plaintiff's skills as transferable was proper. Thus, plaintiff's argument on this point is also without merit.
 
 
 43
 Therefore, for the foregoing reasons, the Magistrate's judgment affirming the Secretary's denial of plaintiff's request for benefits is hereby AFFIRMED.
 
 
 
 [1]
 An ALJ is entitled to consider the opinion of a vocational expert as reliable evidence of a plaintiff's capacity to work. See Vasquez v. Schweiker, 701 F.2d 733, 736 (8th Cir.1983)
 
 
 [2]
 See also Social Security Ruling 82-41, Social Security Rulings (Cum. ed. 1982) at 196, 197-99. Although this ruling states that semi-skilled work requires more than thirty days to learn, it also states that close attention must be paid to the actual complexities of the job, such as dealing with data and people and the type of judgment needed to perform the relevant work. Thus, a clear answer to the issue is not provided by this ruling